Thank you, Your Honor. If it please the court, my name is Vincent Cusano. I'm the appellant in the Consolidated Appeals. Today I will address three points in support of my position that I believe summary judgment and the underlying judgment in this case, which is dated 90503, which was affirmed by Cusano II, should be reversed for the following reasons. First, the summary judgment that was issued on remand of Cusano I, which was the law of the case, and affirmed by Cusano II, ignored the 1990 Bankruptcy Court's confirmation order of my plan of reorganization under Chapter 11. It ignored the judgment and intent of the Bankruptcy Court, which Cusano I, again the law of the case, gave due weight and accord to the reversion of my copyright assets, which underlie this entire proceedings. Those copyright assets being my jointly owned copyrights, 50% copyright share in concert with the Copyright Act for the eight Lick It Up compositions. I'm sorry, Your Honor. I'm sorry to interrupt you. Yes. My question is, what is your best evidence to support your claim that the royalties you receive for the Lick It Up compositions constitute deferred compensation for your personal services? It seems to me this is the heart of your claim. The personal services, Your Honor, personal services argument is mooted by the defendant's judicial admission in 2009 that I own the Lick It Up copyrights under the UMG garnishment. The UMG garnishment, UMG is Universal Music Group, and defendants had garnished illegally, as my briefs show in 06 and 07 appeals, without an order determining claim of exemption, without, in violation of CCP 703550, that I did in fact own the copyrights and rights to royalty proceeds of the Lick It Up copyrights, which are indisputably part of the only copyrights that are associated with the UMG garnishment. Had defendants not made this judicial admission in 2009, even though I had reserved the right to object under the fact that the bankruptcy court was raised judicata and the final judgment of the bankruptcy court was controlling, that reverted those copyrights back in my interest, 06 appeal regarding the employment-based wages would have been controlling. However, that issue of the employment-based royalties are now mooted by the judicial admission, which puts me back in as a jointly owned party to the Lick It Up compositions. And it still entitles me to a reversion of those garnished royalties, which defendants have collected under those garnishment orders, because they were invalid under the injunctive orders, which were void for lack of jurisdiction. The real question that I was trying to ask was, why did they amount to deferred compensation? Yes, Your Honor. Deferred compensation because if this court held that they were in fact employment-based royalties, paragraph 5 under Exhibit B of the employment contract dictates and specifies very clearly that these were compensation for my personal services to defendants, which I was employed to at that time. Excuse me, did you say paragraph 5 of your employment agreement? I believe it's paragraph 5 of the employment agreement. It's Exhibit B, Your Honor. Thank you. I'm looking at the employment agreement. Exhibit B, paragraph 5, does not appear to, it deals with expenses. If Your Honor would permit, I have my opening brief for 06-568-71. It is Exhibit B. I'm sorry, Your Honor. It is, I believe it is paragraph 5 of Exhibit B. I have the December 8, 1983 agreement. There's a paragraph 5 in there which talks about who owns the copyrights. Is that what you're referring to? Exactly, Your Honor. Yes, Your Honor. The December 1983 agreement is pivotal to this appeal in that paragraph 5A and 5B are the two paragraphs that are actually at issue here. Paragraph 5A says that defendants own 100% right, title, and interest if they did not purchase these copyrights at a specific time and place, I'm sorry, at a specific time and date, which was during, at the date specified, which was September 19th, which was a Wednesday, 1984. The evidence presented in the district court shows that defendants did not make that timely payment and under 5B of the agreement, I was to retain 100% of my publisher's and writer's shares of, well, 100% of my publisher's share because the writer's share was not at issue under 5B. 5B is controlling in this case, Your Honor, because the difference between 5A and 5B is that under 5A defendants own it, under 5B Cassano owns it. And what's really an issue, Your Honor, is the publishing share of the Likudop compositions. 5A gave defendants the right to purchase it by this date, and 5B says if they did not purchase it by this date or were late, or if they didn't purchase it beforehand, that the copyrights would revert, and that is the publisher's share, would revert back to me ab initio as if these copyrights belong to you from the date of creation. This became a pre-petition, pre-bankruptcy issue as there was a dispute over ownership, which defendants were entitled and required by law under my 1989 bankruptcy, and this was five years after these contracts, Your Honor, to raise, if there was a dispute, these defendants had to raise this issue in my bankruptcy, which was a Chapter 11 bankruptcy. The law specific under bankruptcy law, and that is if there's a collateral estoppel for any creditor who fails to file a proof of claim, they are collaterally estopped from raising any issue post-petition, and that bankruptcy confirmation plan becomes final. Once that decision is final, no creditor can come forward after the fact and claim ownership or raise any dispute to any claim that should have or could have been raised during that bankruptcy. That's why the judicial admission is pivotal in this case, Your Honors, because that judicial admission reconfirms the law of the case of Casano 1. The Judge Candy panel, Prager Sun panel, analyzed the bankruptcy case, whether it was affirmed, what my rights were, and what defendants' preclusions were, and under Casano 1, which was the law of the case, I was entitled to the copyrights and rights to those royalty payments post-petition, and that date of that post-petition forward was March 7, 1989. Upon my confirmation of that plan, which the Candy panel affirmed, they affirmed the confirmation of that plan. Upon that confirmation of the Candy panel, those rights were invested in me by technical abandonment, and the Candy panel at the Westlaw version from 945 to 949 specified and dictated and outlined what those rights were, and it went as far as saying it didn't matter what I called them, the clarity of my scheduling of those assets, they were scheduled as songs written while the band known as Kiss, and these were not just isolated to those songs, there were songs written while I was under contract to Christmas, there were songs I had written for the rock group called The Bangles, all of them were listed under the same heading, the same copyrights, the same column designated for patents, trademarks, and general intangibles, that they were my properties under, I believe, schedule B or C in my bankruptcy filing. In 1990, my bankruptcy was confirmed by Judge Calvin Ashland, who is now deceased, and the defendants who were listed as the Kiss Company, Gene Simmons and Paul Stanley, the Kiss Company, they were listed as creditors with a contingent claim. Not only did they not make an appearance in the bankruptcy court, not only did they not make an appearance, but they forfeited and waived any objection to filing a proof of claim, objecting to my assets, objecting to whether the ownership aspect was correct or not, and they also did not file a competing claim to the Lick It Up copyrights or songs written while in the band known as Kiss, which included the copyrights, and in September 1990, the plan was confirmed. All of the properties reverted by technical abandonment, which was affirmed by the Canby Panel and Casano One. So the confirmation of the bankruptcy order and the Casano One panel should be upheld here, Your Honor, and I'm asking this court to, I'm asking this court for a trial on the issues, a reverse summary judgment and Casano Two as being in conflict with Casano One, which was the law of the case. I'm asking this court for a trial on the issues as there was a disputed issue of material fact regarding the ownership of these assets, and in my humble opinion, this would preclude an imposition of summary judgment pursuant to Rule 56. Okay. I think we have your position well articulated. You've used up almost all of your time, so I'm going to let the Klein side of the argument make their arguments, and then I'll give you a couple of extra minutes to respond to them. Thank you, Your Honor. Good morning to the panel. Brian Wolfe on behalf of the Appellees in the Consolidated Appeals. I really don't know where to begin. How did you dissect or respond to the argument Mr. Casano made in response to Judge Nelson's question? His principal argument seems to be that pursuant to his 1989 bankruptcy proceeding, he retained certain rights with respect to musical compositions that he co-authored during the period of time that he was with Kiss. That very issue was addressed in 1997 by the district court. It was ruled on. As Mr. Casano acknowledged, there were disputed issues of fact on that issue. Those facts were considered by the district court. During the course of the five years that the action was proceeding before the district court, the same very argument was made before this court when Mr. Casano appealed the judgment from September 2003 of the district court entering judgment in favor of all of the Appellees. This very same argument was made in this court. It was considered. It was rejected. In fact, during the course of the proceeding in the district court starting in 1997, because Mr. Casano made this same argument, the district court ordered Mr. Casano to go back to the bankruptcy court and seek authority to proceed with his claims, which meant he needed to reopen his 1989 bankruptcy action. None of this is in the record before this court. And these arguments weren't in Mr. Casano's answering briefs. So it's well beyond what's presented to the court. But, again, to explain a little bit of the history. All right. Now, to get to I understand that there is a new argument, appears to be a new argument before us. But in any event, that's the argument that's made. So you've addressed that. Now, could you answer Judge Nelson's question as to why whatever royalties Mr. Casano is getting are not earnings? Yes, Your Honor. Music royalties by their very nature would not fall within the provision of 15 U.S.C. 1673. Just a cursory reading of the statute provides that the maximum allowable garnishment that may be made on an employee's wages or earnings for the week shall not exceed 25 percent. What we're dealing with here is a levy on third-party music royalties, not wages. The third parties who received a writ of execution to satisfy the judgment that the district court entered in favor of Appleese and against Mr. Casano, the writ of execution was submitted to third parties who paid Mr. Casano or had at that time periodic music royalties. Those aren't wages. They're not paying him for his services. They're paying him pursuant to the contractual requirements to pay royalties. I finally found the appropriate Paragraph 5, 5B, which says, You shall be entitled to your so-called songwriter's share of income derived from the worldwide exploitation of your look-it-up compositions. Even though that is given by third parties, why isn't that earned income as opposed to simply separate royalties? I would say, Judge Nelson, because it doesn't – those royalties are not paid as a result of Mr. Casano rendering services to the third party. Mr. Casano rendered services to the Kiss Band as a musician for two years. The third party who pays the royalties pays them pursuant to a separate contract that has nothing to do with Mr. Casano. And so those royalties are not the result of services. They're not wages. They're not wages, essentially. They're not the result of services paid by the third-party music publisher or record company or whatever the entity might be. It's a public performance rights society to Mr. Casano. Mr. Casano did not provide services. It would be akin, I guess, to if someone was paid to build a apartment or a house, and they were paid for those services, and years later that house or apartment was rented and the rental income then flowed through to the owner, the person who built the house and was paid for those services wouldn't have any rights. Those aren't wages flowing through to the person who either built or, in this case, co-authored a musical composition. Those services were rendered back in 1982 to the partnership, Kiss, the band, for the services rendered at that time. And he was paid for those services. And these are not in any way in the form of deferred compensation? Absolutely not, Your Honor. These are strictly contractual music royalties that are paid to songwriters. That's one point. The other point I would just like to state, and I hope it's not lost on the Court, is what Mr. Casano is arguing is essentially an effort to re-litigate issues and facts that were presented to the district court in 1997. Fifteen years ago, this exact same argument regarding his purported ---- No, we have that point, counsel. All right. I don't want to belabor that any further then. Okay. The other point I would raise, that Mr. Casano suggested that there was some claim of exemption that would preclude his garnishment or preclude the levy on these third-party royalties. Again, it's not an argument that was made before the district court. It's not an argument that's supported by the record on this appeal. And even if it was considered, Mr. Casano, after Apolles began levying on his music royalties, Mr. Casano filed a motion with the district court to seek an exemption based on poverty. The district court had a hearing. It was briefed. It was submitted. The district court agreed at that time, based on a stipulation from Mr. Casano, to limit the recovery of levy on royalties to 50 percent of those royalties. That was stipulated to by Mr. Casano. For him to now come back years later and say music royalties are not recoverable under any circumstances based on a writ of execution is contrary to his own permitted procedure. I would only point out one additional fact on that issue. When he stipulated to permit Apolles to levy against 50 percent of his music royalties, it was agreed in that stipulation and affirmed by the court that would last only as long as the time that the underlying 2003 judgment was up on appeal before this court. When that appeal was affirmed by this court in 2005, the requirement that the Apolles limit the amount of levy to 50 percent was lifted. We then filed a motion with the court to modify that underlying order that we could collect 100 percent of the music royalties, as Mr. Casano agreed to. The court agreed, filed that order, and it's that order from November of 2006 that gives rise to the first appeal of these consolidated appeals. The only issue before the court is whether the district court abused its discretion in amending that 2006 order to permit Apolles to execute on 100 percent of the music royalties. That's the only issue before this court. All these other tangents and requests to relitigate issues and facts that were addressed both by the district court and this court a decade ago are not before this court. It's not an issue. As a matter of interest, on what basis did you direct UMG to withhold royalties from Mr. Casano beginning in 1997? Your Honor, I don't recall the specifics of that issue. And, again, it's not that issue is not before this court. It wasn't raised in the district court. There's nothing in the district court record to support that proposition. So I don't think I can meaningfully respond to it other than at that time there was a disputed issue over who was entitled to royalties and whether or not there was an instruction to withhold royalties or not. And I don't recall, and it's not an issue before the court. I understand your answer. If there's no other questions, I would reserve my time to further reply or if we're going to. There's no reserved time, but you don't need to. We don't have any more questions. Are there any other questions from the panel? I have a question. Go ahead. What should I do about the order that was entered in January, a month prior to the order amending the judgment, where the judge talked about why he was going to deny the motion because it wasn't a ministerial act? What should I do with that? I'm sorry, Judge Christin. Could you repeat which order you're referring to? I think it was entered in. I'm just trying to put my hands on it. I think it was entered in January of 2008 where he declined to amend the judgment, and then he did so a month later. Yes. Now, that is an issue that's addressed by Mr. Cusano in appeal case number 0855482. And in that situation, and again, it's the history is following the district court or pursuant to the judgment entered by the district court in 2003, the court affirmed the judgment in favor of defendants, appelees, and awarded both sanctions and costs against Mr. Cusano and his counsel at that time in excess of $100,000 for filing a frivolous appeal. Right. Just as I would argue this was completely frivolous. As a result of that, the court then amended the underlying judgment from 2003, which had awarded recovery of costs and attorneys' fees under Civil Code Section 3344 because Mr. Cusano had filed a claim for misappropriation of right of publicity in the 1997 action. That claim was dismissed by the court under Civil Code Section 3344, the prevailing parties entitled to recover attorneys' fees and costs, which we did. So the court awarded those attorneys' fees and costs, and then subsequently Judge Kaczynski's panel awarded in excess of $100,000 in sanctions against Mr. Cusano and his counsel in the prior appeal. That additional sanction award then was consolidated with the judgment from the underlying action, and that was the basis of the court's order in 2008 to simply consolidate the amounts. There were two separate amounts that Mr. Cusano had technically a judgment against. One was for the underlying attorneys' fees and costs, and the other was for the sanction award. So that was consolidated in 2008. That forms the basis of Mr. Cusano's appeal of that order. And again, the only issue before the court would be whether it was abuse of discretion by the district court in its order of 2008 to essentially amend the amount under the 2003 judgment, not the substantive findings, simply the amount to consolidate the additional sanction award into it. Are there any other questions I can answer for the panel? That's the part I did understand. But maybe when you come back, I'll ask the question again. But he's not coming back. Judge Fischer has said I'm not coming back. Wasn't there an order entered where the – didn't the court decline to amend the judgment initially and then come back and amend the judgment to incorporate the attorneys' fees? I don't believe so, Your Honor. I'll double-check the record. I may have misunderstood it.  I don't believe so. All right. If I – if I just may say in closing, this is the third time I've been before this court on the same issues that Mr. Cusano is raising again. The district court action was commenced 15 years ago in 1997. The final judgment was entered in the district court in September 2003, nearly nine years ago. That judgment then was affirmed in its entirety by this court in 2005, nearly seven years ago. Yet here we are again, arguing the same issues, the same facts that have been considered time and time again. And I can only ask that the court enter appropriate sanctions against Mr. Cusano and bring this case to a close once and for all. You know, I'm a firm supporter in the judicial system, but this is really an abuse. This has been going on for 15 years, and I can only request that the court please assist me and my client in having this case brought to an end. Thank you. Okay. Thank you. Okay. Mr. Cusano, you have two minutes left. Yes, Your Honor. Mr. Wolf is misleading this court, and it is shameful, disgraceful, the argument he's making. First of all, the 06 appeal, the 06 appeal is void for lack of jurisdiction. I was denied 14th Amendment due process rights to be heard prior to the taking of my properties, to give to defendants 100 percent of my income, which lasted almost seven years. Mr. Cusano, you understand we're not here to revisit the rulings on those prior cases. Yes, Your Honor. We're here on enforcement of the attorney fees order. You are aware of that? Enforcement of attorney fees order? No, Your Honor. I'm not aware of that. Okay. I'm not sure what order of attorney fees that you're referring to, Your Honor. But each order – The issue that was raised by Judge Nelson goes to whether or not they can levy on the execution. Isn't that correct? Yes, Your Honor. The levy on execution was void for lack of jurisdiction. Mr. Klein never – or Mr. Laveley or Mr. Wolf never filed for an order determining claim of exemption under Westervelt privilege, or Ragoza v. Sperl never had filed for an order determining claim of exemption, and the without due process under the 14th Amendment and in violation of these cases that required defendants to file an opposition to my claimed exemptions, which were timely under 703-550. In failing to do so, I'm entitled to a reversion of all the monies defendants collected in excess of $200,000. Okay. And that's what we thought the case – And these monies are not – defendants are not entitled to this. That's what we thought the case was about. We have your briefs, and we will decide the case accordingly. So we will close the argument on this particular group of appeals, and the case is submitted. And I assure counsel we have read the briefs, counsel on both sides and Mr. Cassano. So the case is now submitted. Your Honor, would I be able to have – I'm sorry? Your Honor, would I be able to be allowed one more minute of response? No. Thank you. You're going to have to move all along. We've got another one of your appeals that we need to be sure to spend some time on, so we will now move to that. The next case is the Cassano appeal.
judges: Nelson, Fisher, Christen